IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EASY CORNER, INC.,                    :      CIVIL ACTION
                                      :      NO. 14-1053
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
STATE NATIONAL INSURANCE              :
     CO., INC.,                       :
                                      :
          Defendant.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        November 3, 2014


          On January 28, 2014, Easy Corner, Inc. ("Plaintiff")

filed a Complaint in the Court of Common Pleas for Philadelphia

County against State National Insurance Company ("Defendant").

The Complaint contains two counts: breach of contract and bad

faith in violation of 42 Pa. Cons. Stat. Ann. § 8371. Defendant

removed the case to this Court.[1] Plaintiff, the owner of a bar,

alleges that Defendant, which insured Plaintiff's bar, has

_____

[1] This Court has diversity jurisdiction over the subject matter,
as the parties are citizens of different states - Plaintiff is a
citizen of Pennsylvania and Defendant is a citizen of Texas -
and the matter in controversy exceeds $75,000 between
Plaintiff's two claims. The parties agree that Pennsylvania law
should govern this case.

failed to pay Plaintiff for damage covered by the insurance policy, thus breaching contract, and has engaged in bad faith conduct with respect to its adjustment of Plaintiff's loss. Defendant has moved for summary judgment and, for the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.   BACKGROUND[2]

For more than ten years, Plaintiff – a corporation owned by Ezra Reuven, who also owns an apartment building and an auto repair shop – operated Easy Corner Bar at 537 North 35th Street in Philadelphia. Ezra Reuven Dep. 9:6-20, 12:13-13:11, July 1, 2014, ECF No. 14 Ex. A. In 2012, Plaintiff attempted to sell the building (which includes both the bar and the apartments that Plaintiff owns), but was unsuccessful. Id. at 19:9-20:16. In the meantime, Reuven decided to get a new manager for the bar (his wife managed it previously) and met Darius Mason, who offered to run the bar for Reuven. Id. at 20:2-21:12. On May 10, 2012, Reuven and Mason executed an "Agreement regarding Management of 'Eazy Corner Inc.'" ECF No. 14 Ex. B. Key terms of the agreement included:

---

[2] For the purposes of this motion, Defendant accepts Plaintiff's version of the facts, which are primarily presented in the deposition of Ezra Reuven.

- Mason would manage the bar from June 1, 2012 to May 31, 2013.

- Mason would pay Reuven $3000 per month and keep any additional profit.

- Mason would assume all legal responsibility for the operation of the bar and be responsible for the payment of all bills and necessary purchases (including the liquor, which he would purchase in Pennsylvania).

- Reuven, in conjunction with his accountants, would continue to handle tax and bookkeeping matters, but Mason would be responsible for maintaining the checkbook.

- Mason would be responsible for the maintenance of all equipment, as well as all damage and repairs.

At some unknown point before the contractual end of the management agreement, Mason informed Reuven that he wished to renew the agreement. Reuven took some time to think about it, then told Mason that he did not wish to renew the agreement and that he "hope[d]" Mason would leave after the agreement ended. Reuven Dep. 28:2-29:25. According to Reuven, Mason "d[id]n't sound so happy" about that. Id. at 30:23-25.

After the end of the agreement, Mason just "k[ept] running the place" against Reuven's wishes. Id. at 31:4-6. The day after the agreement ended, Reuven changed the lock on the front of the building, but Mason cut the padlock the same day and continued to manage the bar. Id. at 31:21-23. (Reuven did not attempt to padlock the building again, and never made any

efforts to prevent Mason from using his key to enter the bar through the back of the building. Id. at 44:16-19.) When Reuven realized what Mason had done, he called the police to report it, but the police told him that Reuven would need to take Mason to court in order to evict him. Id. at 35:9-24, 38:2-7. Reuven retained a lawyer for this effort, but waited to do so until for several months, id. at 38:8-41:22, as he is "a little bit scared" of Mason, id. at 42:2-8. Between the end of the agreement and the time Mason finally left, he did not pay Reuven the agreed-upon $3000 per month. Id. at 46:23-47:5.

At some point during the beginning of August 2013, Reuven approached Mason again about leaving the bar, and Mason asked to "have the last weekend" before leaving – the "weekend" being Saturday, according to Reuven. Reuven agreed. Id. at 42:22-43:25. Mason then threw a party for his final Saturday night at the bar, which was August 17. Id. at 44:20-46:21. The following day – Sunday, August 18 – Reuven and his wife passed by the bar and saw Mason and four other people "destroy the place" and "[b]reak everything." Id. at 47:6-21. Reuven called the police, and Mason and his companions were arrested.[3] Id. at 48:6-9.

---

[3] Reuven also filed a suit against Mason in Delaware. Id. at 48:22-25. In a separate claim, he also got a judgment of eviction against Mason, including $52,000 in damages. Id. at 53:4-11.

The bar sustained extensive damage as a result of Mason's actions – Young Adjustment Company estimated that the total loss was $42,950.14. ECF No. 15 Ex. D at 10. That amount included damage to the apartment above the bar, where Mason was a tenant and which he also wrecked.[4] Id. at 6-8; Reuven Dep. 98:2-17. However, after Risk Control Associates – Third Party Administrator on behalf of Defendant – conducted its investigation into Plaintiff's claim, it concluded that Mason was a manager of the bar. Plaintiff's insurance policy reads in relevant part:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> . . . .
>
> h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.
>
> This exclusion:
>
> (1) Applies whether or not an act occurs during your normal hours of operation;
>
> (2) Does not apply to acts of destruction by your

---

[4] Mason had stopped paying rent after the first two months of his lease, but Reuven says that Mason was still allowed to be in the apartment – just not the bar – on August 18. Reuven Dep. 101:1-12.

> employees (including temporary employees and leased
> workers) or authorized representatives; but theft by
> your employees (including temporary employees and
> leased workers) or authorized representatives is not
> covered.

Commercial Property Policy, ECF No. 14 Ex. C at 28. Therefore,

Defendant concluded, Mason's destruction of Easy Corner Bar fell

into this clause, and Plaintiff was excluded from insurance

coverage. Letter from Chrystie M. Lalor, Prop. Claims Exam'r,

Risk Control Assocs. Inc., to Easy Corner, Inc. (Nov. 22, 2013),

ECF No. 1 Ex. A-C.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine

dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion

for summary judgment will not be defeated by 'the mere

existence' of some disputed facts, but will be denied when there

is a genuine issue of material fact." Am. Eagle Outfitters v.

Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A

fact is "material" if proof of its existence or nonexistence

might affect the outcome of the litigation, and a dispute is

"genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Anderson, 477 U.S. at

248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**III. DISCUSSION**

Defendant has moved for summary judgment on both of Plaintiff's claims. Defendant, who fully accepts Plaintiff's version of the facts for the purposes of this motion, argues that it is entitled to judgment as a matter of law. Plaintiff disagrees, arguing that there are genuine issues of material fact that must be resolved by a jury. The Court considers each of Plaintiff's claims in turn.

1.  Breach of Contract

"Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the

7

insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009)(citing Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996) (applying Pennsylvania law)). Defendant, the insurer, contends that an exclusion applies in this case. Two essential questions result: (1) whether on August 18, Mason fit into one of the exclusion's enumerated categories of individuals such that his "dishonest or criminal act[s]" are excluded from coverage, and (2) whether Mason was entrusted with the property such that any theft he committed is excluded from coverage.

Defendant collapses the exclusion into one issue of entrustment, arguing that Mason was entrusted with the property, and therefore the exclusion applies to Plaintiff's entire claim. But that is not the question asked by the insurance policy itself, which contains two distinct clauses, only one of which considers entrustment:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> . . . .
>
> h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized

representatives, whether acting alone or in collusion with each other or with any other party; <u>or</u> theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

Commercial Property Policy, ECF No. 14 Ex. C at 28 (emphasis added).

The most reasonable reading of this exclusion provision reveals that it has two portions (aside from the exceptions to the exclusion). The first covers "dishonest or criminal act[s] (including theft)," and applies to the insured and any of the insured's "partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives." The second covers theft alone and applies to "any person to whom you entrust the property for any purpose." Only the second part contains an entrustment provision; the first part mentions only specified categories of individuals. And because the entrustment clause contemplates only theft and not other forms of loss, whether a loss-causing individual was entrusted with the

property is the end of the inquiry only if theft is the sole basis for coverage.

The construction of the exclusion provision supports this reading of it. If the entrustment clause was meant to apply to the entire provision, such that it covered any "dishonest or criminal act" by "any person to whom you entrust the property for any purpose," there would be no need to specify that theft is included in "dishonest or criminal act" and then list it <u>again</u> in connection with the entrustment clause. The repetition of "whether acting alone or in collusion with any other party" in each section of the provision operates the same way. There is also a semicolon before the "or," which serves to draw a distinct line between the two portions of the provision and make it clear that they should be read separately.

Compare the exclusion at issue here to the exclusion at issue in <u>Bainbridge, Inc. v. Calfarm Ins. Co.</u>, 2004 WL 2650892, at *6 (Cal. App. Ct. Nov. 22, 2004), for example:

> We will not pay for loss or damage caused by or resulting from:
>
> . . . .
>
> e. Dishonesty: Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
> (1) Acting alone or in collusion with others; or
>
> (2) Whether or not occurring during the hours of employment.

10

Under the language of the Bainbridge policy, the general
"dishonest or criminal act" provision encompasses the broad
mention of entrustment. Unlike the case at hand, there is no
semicolon before the critical "or," nor is there any repetition
of phrases suggesting that there are separate sections of the
provision applying to potentially different conduct by different
groups of people.

Defendant may have intended its policy to have the
same clear meaning as the policy in Bainbridge. But that is not
the policy Defendant drafted. Construing any ambiguity here (if
there is indeed any) against the insurer, see Madison Const. Co.
v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999), it
is clear that the exclusion at issue has two separate parts: one
that applies to specific categories of individuals, but includes
all dishonest or criminal acts in its list of excluded losses,
and one that applies to the broad category of entrusted
individuals, but includes only theft in the list of excluded
losses. These two clauses are neither mutually exclusive nor
codependent. Accordingly, the Court will analyze them
separately. And in this case, in fact, one clause acts as an
effective bar to portions of coverage while the other does not.

11

1.   <u>Clause One: "Dishonest or Criminal Act"</u>

The first clause prohibits coverage for any "[d]ishonest or criminal acts (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party." Commercial Property Policy at 28. As the parties agree, the enumerated category most applicable to this situation is "managers." Taking the facts in the light most favorable to Plaintiff, Mason and Reuven had agreed that Mason's last day at the bar would be August 17 (Defendant accepts this fact for the purpose of summary judgment[5]). Under these circumstances, Mason cannot be considered a manager on a date after which he and Reuven had explicitly agreed that his management role would terminate,[6] regardless of the status of his entrustment (discussed below). Rather, under the facts as presented for summary judgment, this is the case of a <u>former</u> manager returning for retaliation. Since none of the other categories seem to apply to Mason, at least not as of August 18, the day after his management role terminated, the

---

[5] <u>See</u> Def.'s Mem. Law Support Mot. Summ. J. at 2, ECF No. 14.

[6] The parties put a great deal of emphasis on Reuven's behavior with the padlock, which is irrelevant to this specific issue, as Reuven explicitly agreed to allow Mason to remain at the bar until August 17. The padlock is an issue of entrustment.

exclusion's first clause therefore does not apply and does not form a basis for denying coverage.[7]

Therefore, the Court will deny Defendant's motion for summary judgment as to any claims for coverage not otherwise excluded under a different section of the exclusion provision, as discussed below.

2.   Clause Two: Theft by Entrustment

That leaves the question of whether Mason was still entrusted with the property on August 18, such that any theft he committed[8] that day is excluded from coverage. The exclusion provides that "theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party" is not covered by the insurance policy. Commercial Property Policy at 28. This entrustment clause, which

---

[7] Relatedly, though it is unnecessary here because the exclusion itself does not apply in the first place, the exclusion does contain an exception: the exclusion does not apply to acts of destruction by employees or authorized representatives. Should Mason qualify as an employee or authorized representative as of August 18, Plaintiff would have another basis for coverage for any destruction he caused, but the exception is not relevant here. No facts indicate that Mason was ever Plaintiff's employee, and whether or not he was at one point an authorized representative of Plaintiff under the facts available for this motion, he was no longer a representative on August 18, as discussed above.

[8] Reuven conceded in his deposition that at least some of the allegedly stolen property – the liquor, specifically – was in fact Mason's to take. Reuven Dep. 31:24-33:2.

considers theft alone, is far more narrow in its scope than the "dishonest or criminal act" clause.

The purpose of an entrustment exclusion is "to exclude from the risk undertaken by the insurer those losses that arise from the 'misplaced confidence' of the insured in those to whom it entrusts its property." Bainbridge, 2004 WL 2650892, at *6 (citing Van Sumner, Inc. v. Pa. Nat. Mut. Cas. Ins., 329 S.E.2d 701, 704 (N.C. App. Ct. 1985)). Here, the insured and the individual causing the losses had come to an agreement about the end of the individual's right to be on the property, and the losses occurred after his right had terminated. (As discussed above, Reuven and Mason had determined together that August 17 would be Mason's last day at the bar, and the destruction occurred on August 18.) A critical question, then, is this: when does entrustment terminate?

There is limited case law on the scope and termination of entrustment. Notably, in 3039 B Street Assocs., Inc. v. Lexington Ins. Co., 483 F. App'x 693 (3d Cir. 2012), the Third Circuit affirmed a decision by this Court, 3039 B Street Assocs., Inc. v. Lexington Ins. Co., No. 10-1740 (E.D. Pa. June 21, 2011), granting summary judgment to the insurance company where the person who caused the losses at issue (stealing radiators) had been entrusted with the property in order to remove other metal from it. In support of that decision, the

14

Third Circuit cited <u>Wexler Knitting Mills v. Atl. Mut. Ins. Co.</u>, 555 A.2d 903, 905 (Pa. Super. Ct. 1989) (applying a similar exclusion where a sweater manufacturing plant sought coverage for its employees' theft of sweaters and yarn within the plant), and <u>Wagner v. Edemnify, LLC</u>, No. 4:08-cv-299, 2009 WL 5062058, at *3 (E.D. Tex. Dec. 16, 2009) (determining that the plaintiff entrusted the property inside the covered building by "giving [the thief] the key and alarm code, so that he could enter the building at any time without supervision"). And in the underlying order, this Court also cited <u>Transp. Ins. Co. v. DiDaniele</u>, No. 88-4802, 1990 WL 149222, at *23-24 (E.D. Pa. Oct. 2, 1990) (denying insurer's summary judgment motion sought under a similar exclusion because there was a material factual question as to whether the insured's employee caused the damage with intent so that it was dishonest or criminal). None of those cases, however, speak directly to the question of the termination of entrustment, since in each of them the individual who caused the losses had not actually ended his entrustment relationship with the insured by the time the loss occurred.

Defendant offers several cases from other jurisdictions that do speak more directly to this issue. In <u>F.D. Stella Prods. Co. v. Gen. Star Indem. Co.</u>, No. 03-5151, 2005 WL 3436388 (N.D. Ill. Dec. 12, 2005), Plaintiff had a security interest in a property by virtue of its agreement with the

15

restaurant located there, which ceased operating at some point.
Another restaurant moved onto the property with the knowledge of
Plaintiff, which contacted the new restaurant regarding their
financing of the property. The parties came to no agreement
regarding the lease, sale, or use of the property. Eventually,
the new restaurant was judicially ordered to relinquish
possession of the property to Plaintiff, which was empowered to
enter the premises and take possession. When Plaintiff
inventoried the property, it was discovered that quite a bit had
been removed, including a number of appliances. The Court held
that an entrustment exclusion "applies even if the dishonest or
criminal act occurs after the entrustment has terminated." Id.
at *7.

In so holding, the F.D. Stella court cited Bainbridge,
2004 WL 2650892, and Plaza 61 v. N. River Ins. Co., 446 F. Supp.
1168 (M.D. Pa. 1978). In Bainbridge, a former employee who had
resigned from the insured company temporarily turned in his
personal laptop so his former employer could remove the
proprietary data stored it. When he returned to retrieve it, he
got into a fight with one of the company's owners and forcibly
took his computer, which still contained the proprietary
information, without the consent of the company. The Bainbridge
court construed the language of the insurance policy's
entrustment exclusion – which is virtually identical to the

16

language in the case at hand, except that it combines the two clauses so that the entrustment exclusion applies to all dishonest or criminal acts, not just theft - to apply even after the termination of an entrustment:

> Nothing in the language of the entrustment exclusion requires that the wrongful act and the entrustment of property be contemporaneous. . . . We construe this language to require nothing more than a causal connection between the act of entrustment and the resulting loss, even if the loss occurs after the entrustment has terminated.

Id. at *6. And the Plaza 61 court, applying Pennsylvania law, similarly ruled in favor of the insurer on the basis of an entrustment exclusion, even though the contractual relationship between the alleged thief and the insured had ended before the theft occurred:

> The mere fact that Majo had been told to vacate the site does not change this taking into a theft. Regardless of the status of the parties' legal relations on December 5, 1973, Majo had come into possession of the disputed goods as a result of its work under the construction contract and was carrying them off under a claim of right arising from that contract.

Plaza 61, 446 F. Supp at 1171.

        The Court agrees with the other courts cited that given the purpose of entrustment exclusions, they apply even after the temporal termination of an entrustment, provided that there is a causal connection between the act of entrustment and

the resulting loss.[9] Here, the loss is causally connected to the act of entrustment: because of his prior management of the bar, Mason had a key and was able to access the building easily. See Wagner, 2009 WL 5062058, at *3 (thief was given a key and alarm code so he could enter the building at any time).

The Court concludes, therefore, that any theft committed by Mason or those in collusion with him is explicitly excluded from coverage by the insurance policy, and under the circumstances will grant Defendant's motion for summary judgment as to any claims of theft. However, Plaintiff's claims arising from any destruction of property are not excluded under this section of the exclusion and therefore may proceed.

B.   Bad Faith

To recover on a statutory bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371, the insured must prove by clear and convincing evidence that: (1) "the insurer did not have a reasonable basis for denying benefits under the policy"; and (2) "the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Northwestern Mut. Life

---

[9] Although the argument that Reuven could not have entrusted the property to Mason at a point after which the two had agreed Mason's management of the bar would be over is not unreasonable, the weight of authority rests with Defendant here. Plaintiff's argument that these cases are distinguishable because they all involve business property, not real property, is not persuasive.

Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (applying
Pennsylvania law); see also Terletsky v. Prudential Prop. and
Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). The
insurer's conduct need not have been fraudulent, but "mere
negligence or bad judgment is not bad faith." Babayan, 430 F.3d
at 137 (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501
(Pa. Super. Ct. 2004) (internal quotation marks omitted)).
Ultimately, the insured must show that "the insurer breached its
duty of good faith through some motive of self-interest or ill
will." Brown, 860 A.2d at 501. When opposing a motion for
summary judgment on a bad faith claim, the insured's burden is
"commensurately high because the court must view the evidence
presented in light of the substantive evidentiary burden at
trial." Babayan, 430 F.3d at 137 (quoting Kosierowski v.
Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)
(internal quotation marks omitted)).

      Plaintiff has not met the burden of showing clear and
convincing evidence of bad faith here. Plaintiff's argument is
essentially that Defendant was in the wrong in denying coverage,
and must have or should have known as much, and therefore
Defendant must have acted in bad faith. But Plaintiff has
pointed to no facts of record showing that Defendant's denial of
coverage rose above "mere negligence or bad judgment" or that

Defendant acted out of self-interest or ill will.[10] Rather, under Plaintiff's reasoning, virtually every incorrect denial of insurance coverage would constitute bad faith merely by virtue of being incorrect.[11]

Plaintiff also declares that Defendant "knew or should have known that the relied upon exclusion was not applicable with regard to damage to real property." Resp. Opp'n Mot. Summ. J. at 23, ECF No. 15. Plaintiff fails to show that this alleged distinction between real property and business property is even relevant,[12] much less that Defendant actually knew or recklessly

---

[10] Mere insinuation is not enough; Plaintiff must provide evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (applying Pennsylvania law) (quoting Bostick v. ITT Hartford Grp., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

[11] For a few examples of statutory bad faith, see Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 433-36 (3d Cir. 2007) (insurer misrepresented the terms of the policy, dragged its feet in the investigation of the claim, hid information from the insured, and shifted its basis for denying the claims); Grossi v. Travelers Pers. Ins. Co., 79 A.3d 1141, 1154 (Pa. Super. Ct. 2013) (insurer delayed its investigation, made unreasonable assumptions, had inexcusable periods of inactivity, and communicated inadequately); Berg v. Nationwide Mut. Ins. Co., Inc., 44 A.3d 1164, 1175 (Pa. Super. Ct. 2012) (a jury's finding that insurer had violated the Uniform Trade Practices and Consumer Protection Law could be used as evidence of bad faith).

[12] In its response to the summary judgment motion, Plaintiff argues that none of the cases cited by Defendant are analogous to the instant case because those cases involved business property, not real property, and that the distinction is

disregarded that fact.

Therefore, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claim of bad faith.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment in part and deny it in part. Because Mason does not fall into one of the enumerated categories of individuals in the "dishonest or criminal act" clause, but was entrusted with the property, the Court will deny the motion for summary judgment as to any breach of contract claims for destruction of property, but grant the motion for summary judgment as to any claims of theft. And because there are no facts under which a reasonable jury could find by clear and convincing evidence that Defendant engaged in bad faith with respect to its refusal to cover Plaintiff's loss, the Court will

---

significant because of the exclusion's destruction exception. Resp. Opp'n Mot. Summ. J. at 17. But in the absence of any contractual language actually indicating as much, there is no reason to think this exclusion in the insurance policy distinguishes between real and business property per se. Cf. 3039 B Street, 483 F. App'x at 696-97 ("That the radiators were fixtures rather than chattels is a distinction that has no bearing on our interpretation of the exclusion clause."). Plaintiff conflates the existing distinction between the exclusion's "dishonest or criminal act" clause and the entrustment clause with the destruction exception, and argues that the policy itself draws a distinction between real and business property as a result. It does not.

grant the motion for summary judgment as to Plaintiff's bad faith claim. An appropriate order follows.